257 F.3d 1124 (9th Cir. 2001)
 JOHN ANCHUSTEGUI, PLAINTIFF-APPELLANT,
v.
DEPARTMENT OF AGRICULTURE, NAMED AS THE SECRETARY OF THE UNITED STATES DEPARTMENT OF AGRICULTURE; U.S. FOREST SERVICE, NAMED AS CHIEF OF THE UNITED STATES FOREST SERVICE; REGIONAL FORESTER, OF THE INTERMOUNTAIN REGION OF THE UNITED STATES FOREST SERVICE; BOISE NATIONAL FOREST, NAMED AS FOREST SUPERVISOR FOR THE BOISE NATIONAL FOREST OF THE UNITED STATES FOREST SERVICE; MOUNTAIN HOME
RANGER DISTRICT, NAMED AS DISTRICT RANGER FOR THE MOUNTAIN HOME RANGER DISTRICT OF THE UNITED STATES FOREST SERVICE, DEFENDANTS-APPELLEES.
 No. 99-35755
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted April 6, 2001--Seattle, Washington
Filed July 17, 2001
 
 Joanne P. Rodriguez, Assistant United States Attorney's Office, Boise, Idaho, for the plaintiff-appellant.
 Daniel V. Steenson, Jennifer Reid Mahoney and S. Bryce Farris, Ringert Clark Chartered, Boise, Idaho, for the defendants-appellees.
 Appeal from the United States District Court for the District of Idaho D.C. No. CV-97-0541-S-MHW Mikel H. Williams, Chief Magistrate Judge, PresidingBefore: WOOD,[1]TROTT, and PAEZ, Dircuit Judges.
 Harlington Wood, Jr., Circuit Judge
 After exhausting all administrative remedies, on November 18, 1997, Plaintiff Anchustegui filed a complaint in the district court in Boise, Idaho, against the Secretary of the United States Department of Agriculture ("Secretary of Agriculture"), the Forest Service, the Regional Forester, the Boise National Forest Supervisor, and the Mountain Home District Ranger. Anchustegui sought judicial review of the Forest Service's decision to cancel his permit to graze sheep in the Mountain Home Ranger District, challenging the decision under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 706. Although the court referred the case to mediation, the parties were not able to reach a settlement. The administrative record was filed on September 1, 1998. Both parties agreed to have the case decided by a magistrate judge and both moved for summary judgment. Arguments were heard on February 16, 1999, and the court issued a memorandum decision and order granting summary judgment in favor of the Secretary of Agriculture on May 14, 1999. Judgment was entered on May 21, 1999. We have jurisdiction under 28 U.S.C. §§ 1291, and we reverse the district court's decision.
 BACKGROUND
 Anchustegui owns and runs a livestock operation. Since 1978, he has held a renewable grazing permit in the House Mountain/Granite Creek allotment of the Mountain Home Ranger District in the Boise National Forest. The 1996 permit allowed Anchustegui to graze 1,000 sheep on the public land allotment between May 10 and September 30.
 On May 24, 1993, Anchustegui's permit was renewed through December 31, 2005. However, on March 31, 1995, a letter was sent to Anchustegui by the district ranger, noting that it would be necessary to perform an evaluation as required by the National Environmental Policy Act in order to determine if the management of the rangeland resources was in compliance with the current laws and regulations (i.e., the National Forest Management Act, the Clean Water Act, the Endangered Species Act, etc.). Although there was documentation of instances during the 1995 grazing season when Anchustegui was found not to have been in compliance with the terms and conditions of the permit, a new permit was issued on April 1, 1996 which superseded the May 1993 permit but which retained the December 2005 expiration date.
 On May 6, 1996, Anchustegui received a copy of his Annual Operating Plan ("AOP") from the district ranger of the Forest Service Office. The AOP noted problems from the previous year: "The heavy, concentrated use in the riparian areas and several of the upland areas that occurred last year was unacceptable and exceed [sic] the utilization standards in your permit and can not be allowed to continue. You agreed that the use did not need to be that heavy . . . . " The AOP also included mention of the Office's Standard Sheep Grazing Practices (a copy of which Anchustegui had already received), stating that they needed to be followed"or it is a violation of your permit." The permit itself contained specific terms and conditions regarding required management practices.
 While grazing his sheep during the 1996 season, Anchustegui received a letter from the district ranger dated September 11, 1996, proposing a 100 percent cancellation of Anchustegui's permit due to certain violations. The letter asserted a number of completed violations of the terms and conditions of the permit and Forest Service regulations: Anchustegui's failure to follow the Forest Office instructions and AOP directives; grazing of livestock outside the area designated in the permit; grazing in the same area more than once; and not moving sheep out of riparian areas immediately after watering. In addition to noting that there had been problems in 1995, the letter recounted that Anchustegui had been made aware of similar violations in 1985 (with a 20 percent suspension of his permit imposed for grazing outside of boundaries), 1989 (with a 30 percent cancellation of his permit for grazing outside of the permitted season), and 1993 (with a 62 percent cancellation of his permit for grazing outside of boundaries and failure to follow Forest Office instructions and AOP directives). The letter instructed Anchustegui that he had until October 10 to show cause in writing as to why his permit should not be cancelled. The letter stated, "Should you fail to provide a timely written response to this proposed permit action, I will implement the permit cancellation as proposed."
 Anchustegui responded in a letter dated October 10, 1996, denying the allegations and requesting documentation, stating that, upon receiving the information, he would "provide a detailed reply." According to a letter dated December 12, 1996 from the district ranger to Anchustegui, the Forest Office provided the information requested on November 7, with a cover letter stating Anchustegui had fifteen days after receiving the information to respond. The district ranger also noted that he had sent a letter to Anchustegui on October 23 which stated that Anchustegui had fifteen days after receiving the requested information to respond and that after the fifteen-day period, a decision would be made. The district ranger then advised Anchustegui that, because the ranger had not received a response, he was canceling 100 percent of the permit for the Mountain Home Ranger District based on the reasons outlined in the September 11 letter. In addition, the December letter notified Anchustegui of his right to appeal the cancellation.
 Anchustegui submitted his first responsive statement in his appeal on January 20, 1997. Although Anchustegui requested and received leave for oral presentation under 36 CFR §§ 251.97, he was sent notification that "cross examination of District Ranger Tripp and other parties will not be a part of the presentation," explaining that the purpose of the oral presentation was to provide "an additional opportunity for an appellant, and other parties to an appeal, to present their view-points to the Reviewing Officer," under 36 CFR§§ 251.97(a). The district ranger filed a responsive statement on February 18, and on March 17 a hearing took place.
 On April 14, 1997, the Forest Supervisor affirmed the decision of the district ranger in a detailed finding, concluding that cancellation of the permit was appropriate. Anchustegui was advised of his right to appeal the supervisor's decision and subsequently filed a second appeal on April 28, 1997. On June 11, 1997, the deputy regional forester affirmed the two previous decisions, again providing a detailed rationale.
 Having exhausted his administrative challenges, Anchustegui filed a complaint under the APA with the district court on November 18, 1997. The district court granted summary judgment in favor of the defendants.
 STANDARD OF REVIEW
 A district court's grant of summary judgment is reviewed de novo. Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir. 1996). The evidence must be viewed in the light most favorable to the nonmoving party in determining whether a genuine issue of material fact exists and whether the district court correctly applied the relevant substantive law. Id.
 We review the agency decision from the same position as the district court. Nevada Land Action Ass'n v. United States Forest Serv., 8 F.3d 713, 715 (9th Cir. 1995). We may not substitute our own judgment for that of the agency, Motor Vehicle Mfrs. Ass'n v. State Farm Mut., 463 U.S. 29, 43 (1983), and in general defer to the agency, Mt. Graham Red Squirrel v. Espy, 986 F.2d 1568, 1571 (9th Cir. 1993), given that "an agency's interpretation of its regulations is `of controlling weight unless it is plainly erroneous or inconsistent with the regulation[s].' " Marathon Oil Co. v. United States, 807 F.2d 759, 765 (9th Cir. 1986) (quoting Udall v. Tallman, 380 U.S. 1, 16-17 (1965)). In order to set aside an agency decision under the APA, we must find it to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or determine that the action failed to meet statutory, procedural, or constitutional requirements. 5 U.S.C. §§ 706(2)(A); Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 414 (1971); see also Resources Ltd., Inc. v. Robertson, 35 F.3d 1300, 1304 (9th Cir. 1993).
 DISCUSSION
 Anchustegui's two main arguments are (1) that the agency's cancellation did not comply with the requirements of 5 U.S.C. §§ 558(c) of the APA and (2) that he was not afforded his constitutional due process rights prior to cancellation of his permit.
 The Secretary of Agriculture is authorized to promulgate rules and regulations for the protection and preservation of national forests. 16 U.S.C. §§§§ 472, 551; see also United States v. Weiss, 642 F.2d 296, 298 (9th Cir. 1981). In addition, the Secretary of Agriculture has independent authority to issue permits for grazing on national forest land. 16 U.S.C. §§ 5801. The Secretary is also authorized to cancel permits for grazing on public lands,
 subject to such terms and conditions the Secretary concerned deems appropriate and consistent with the governing law, including, but not limited to, the authority of the Secretary concerned to cancel . . . a grazing permit or lease, in whole or in part, pursuant to the terms and conditions thereof, or to cancel or suspend a grazing permit or lease for any violation of a grazing regulation or of any term or condition of such grazing permit or lease.
 43 U.S.C. § 1752(a). However, although 43 U.S.C. §§ 315b provides that "the creation of a grazing district or the issuance of a permit pursuant to the provisions of the subchapter shall not create any right, title, interest, or estate in or to the lands," it states that "grazing privileges recognized and acknowledged shall be adequately safeguarded . . . ."
 The statute which controls the actions of the agency in this case, 5 U.S.C. §§ 558, provides:
 (b) a sanction may not be imposed or a substantive rule or order issued except within jurisdiction delegated to the agency and as authorized by law.
 (c) . . . . Except in cases of willfulness or those in which public health, interest, or safety requires otherwise, the withdrawal, suspension, revocation, or annulment of a license is lawful only if, before the institution of agency proceedings therefor, the licensee has been given(1) notice by the agency in writing of the facts or conduct which may warrant the action; and
 (2) opportunity to demonstrate or achieve compliance with all lawful requirements.
 5 U.S.C. § 558(b), (c) (emphasis added.) The APA defines a license as "includ[ing] the whole or a part of an agency permit, certificate, approval, registration, charter, membership, statutory exemption or other form of permission . . . ." 5 U.S.C. §§ 551(8). Therefore, §§ 558 applies to a grazing permit.
 The statute requires written notice and an opportunity to demonstrate or achieve compliance, all "before the institution of agency proceedings." In this instance, the government did not follow the statutorily-mandated procedures. The show cause letter stated that "permit action is warranted" and proposed 100 percent cancellation of the permit, requesting a response as to "why this proposed permit action should not be taken." Anchustegui was entitled to written notice that would afford him the opportunity to correct deficiencies in his performance under this permit. See Air North American v. Dep't of Transp., 937 F.2d 1427, 1438 (9th Cir. 1991) ("the purpose of section 558(c) is to provide individuals with an opportunity to correct their transgressions before the termination or suspension of their licenses") (internal citations omitted). The show cause letter in this case did not provide Anchustegui with an opportunity to achieve compliance or to demonstrate that he had achieved compliance before the institution of agency proceedings. Instead, with its show cause letter stating that "permit action is warranted," the Forest Service instituted agency proceedings against Anchustegui without prior written notice and an opportunity to demonstrate compliance. Therefore, the cancellation of his grazing permit was not valid. See Capital Produce Co., Inc. v. United States, 930 F.2d 1077, 1079, 1081 (4th Cir. 1991) (holding that failure to provide prior written warning that conduct was deficient and an opportunity to correct deficiencies required that license suspension must be set aside); Hutto Stockyard, Inc. v. USDA, 903 F.2d 299, 304-05 (4th Cir. 1990) (same).
 The government now argues that Anchustegui's past and current violations were willful, and the fact that he allegedly committed violations after having received the show cause notice, "defined willfulness." However, the Forest Service did not find that Anchustegui's conduct was willful and the record does not establish that it was. Therefore, the exception for willful conduct is not applicable in this case.
 Because we find a statutory violation, it is not necessary to reach the constitutional question presented. Dep't Commerce v. United States House of Representatives, 525 U.S. 316, 343 (1999) (citing Ashwander v. TVA, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) ( "[I]f a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the Court will decide only the latter.")); see also Ashwander, 297 U.S. at 347 ("The Court will not pass upon a constitutional question, although properly presented by the record, if there is also present some other ground upon which the case may be disposed of."). Also, because we reverse based on the statutory violation, we need not address any of Anchustegui's other arguments in support of reversal.
 CONCLUSION
 For the above-stated reasons, we reverse the district court's grant of summary judgment in favor of the defendants and remand for further proceedings.
 REVERSED AND REMANDED.
 
 
 
 Notes:
 
 
 [1]
 Honorable Harlington Wood, Jr., Senior Circuit Judge, United States Court of Appeals for the Seventh Circuit, sitting by designation.