In the

# United States Court of Appeals
### For the Seventh Circuit

Nos. 04-2948 & 04-2909

HORN FARMS, INC.,

*Plaintiff-Appellee,*
*Cross-Appellant,*

*v.*

MIKE JOHANNS, Secretary of Agriculture, *et al.*,

*Defendants-Appellants,*
*Cross-Appellees.*

Appeals from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 3:02 CV-0831 AS—**Allen Sharp**, *Judge.*

ARGUED JANUARY 3, 2005—DECIDED FEBRUARY 2, 2005

Before BAUER, EASTERBROOK, and WOOD, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Farmers who convert
wetlands to agricultural use lose eligibility for federal
agricultural subsidies. The initial version of this statute, 16
U.S.C. §§ 3821-24, enacted in 1985 and dubbed
"Swampbuster," made the loss proportional to the amount
of wetland converted. An amendment in 1990 provided that
converting *any* wetland would cause the farmer to lose *all*
agricultural payments. A further amendment in 1996 added
an exception for wetlands that had been drained and

farmed, had reverted to wetland status, and then were restored to agricultural use. We must interpret and apply the 1996 exception.

In 1998 Horn Farms drained about 6.2 acres of wetlands. A system of tiles under that ground showed that this was not its first conversion to farm use, but well before 1998 the system had broken down and the parcel had reverted to wetland. The district conservationist concluded, from the age of trees and other vegetation, that the ground probably had become saturated again during the 1970s, and certainly no later than 1981. This led local agricultural officials to deem Horn Farms ineligible for the exception, which covers: "A wetland previously identified as a converted wetland (if the original conversion of the wetland was commenced before December 23, 1985), but that the Secretary determines returned to wetland status after that date as a result of—(i) the lack of maintenance of drainage, dikes, levees, or similar structures; (ii) a lack of management of the lands containing the wetland; or (iii) circumstances beyond the control of the person." 16 U.S.C. §3822(b)(2)(D). The date on which the ground "returned to wetland status" could not be determined with certainty, but it preceded December 23, 1985—so much Horn Farms concedes. Because the Department of Agriculture reads the phrase "after that date" to refer to December 23, 1985, its immediate antecedent, Horn Farms was ineligible for the exception and lost all federal agricultural subsidies. (The statute restores the subsidies if the farmer restores the wetlands, but Horn Farms has declined to do this, and the parties could not agree on the adequacy of its offer to mitigate the loss in other ways. See 16 U.S.C. §3822(i).)

Horn Farms contends that "that date" is the date of the original conversion, so that any wetland converted to farm use before December 23, 1985, always may be farmed again without any loss of federal subsidy, no matter how long it had been a wetland before the second conversion and no

matter what its status *on* December 23, 1985. A federal district court agreed with this position and directed the Department to resume Horn Farms' subsidy payments. 319 F. Supp. 2d 902 (N.D. Ind. 2004). The judge rejected Horn Farms' request that he declare the legislation unconstitutional as a misuse of Congress' spending power, so Horn Farms remains at risk of losing federal support again if it converts any wetland that had not been drained and farmed some time before December 23, 1985. Both sides have appealed; the Department of Agriculture also asks us to review two other parts of the district court's opinion that we describe later.

Because the district court remanded to the Secretary, we must consider whether the judgment is appealable as a "final decision" under 28 U.S.C. §1291. It is not clear what the Secretary is supposed to do on remand; the judgment omits all details. The remand appears to be the result of careless drafting. The district court did not want the Department of Agriculture to take more evidence and make a fresh decision; instead the court contemplated that the Department would restore Horn Farms' subsidy. Yet if by ordering a remand rather than a concrete remedy the judge has made his decision non-final, an appeal is impermissible—though an application under Fed. R. Civ. P. 60(a) might be in order to conform the disposition to the opinion's rationale. Given the rationale of *Sullivan v. Finkelstein*, 496 U.S. 617 (1990), and *Forney v. Apfel*, 524 U.S. 266 (1998), however, the order is a "final decision" as it stands. Nothing that the Secretary could do in the future would lead to a fresh administrative order that the federal government could take back to district court (and this independent of the fact that the Department cannot petition for judicial review of its own orders). It is thus now or never for an appeal. Although *Finkelstein* and *Forney* concerned a provision in the Social Security act rather than §1291, we applied them to §1291 in *Perlman v. Swiss Bank Corp.*, 195

F.3d 975, 979 (7th Cir. 1999): "If the district court finds that the decision was erroneous and enters a judgment wrapping up the litigation, that decision is appealable even if extra-judicial proceedings lie ahead; but if the court postpones adjudication until after additional evidence has been analyzed, then it has not made a final decision." The district court concluded that the Secretary's decision was erroneous and awarded Horn Farms all financial relief that it sought, so the order is appealable now.

Section 3822(b)(2)(D) is ambiguous. The referent of "that date" could be December 23, 1985, as the Secretary contends, but it also could be the date on which the wetland was "previously identified" or the date on which the "original conversion . . . was commenced". Several contextual elements support the Secretary's reading. First, December 23, 1985, is the last antecedent of "that date". See *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003). Second, the date on which a wetland was "previously identified" is meaningless for land converted before December 1985, as the statute's approach to "identifying" wetlands did not come into existence until then. Third, the date of original conversion is an implausible candidate for the antecedent, because then the phrase "before that date" and much of the remaining language would serve no function. It would be as if the statute exempted: "A wetland converted before December 23, 1985, that the Secretary determines returned to wetland status after that date as a result of . . .". Any reading that makes so much of a statute surplusage has little to recommend it. Fourth, when "that date" is understood to be December 23, 1985, the subsection is a non-degradation clause: the legislation protects wetlands as they actually existed on the date of its enactment, penalizing withdrawals without attempting to restore lands then under agricultural production. Reading "that date" to be the time of original conversion would allow net reductions in wetlands after the legislation's enactment—and would

allow them in ways that are difficult to police, because there would be few records to show the date of original conversion, so farmers who drained wetlands after 1985 could make hard-to-refute claims that they were just going back to some long-forgotten state of affairs.

So the Secretary's interpretation not only is reasonable but also is the most sensible understanding of the legislation. Moreover, because the interpretation is expressed in regulations adopted after notice and opportunity for comment, see 7 C.F.R. §§ 12.2(7), 12.2(8), and concerns the Secretary's administration of a federal program, it receives all of the deference contemplated by *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). Yet the district court concluded that a solitary statement by one of the legislation's sponsors overrode all of this. The judge relied on an exchange that took place in the House Agriculture Committee and was summarized (though not reported verbatim) in the committee report:

> Mr. Daschle was recognized to offer a clarifying amendment to the previously adopted Swampbuster provisions. Mr. Daschle briefly explained the provisions of the amendment. Mr. Lewis offered an amendment to the amendment to clarify that the definition of wetlands would not include simply wet soils. Mr. Daschle said he would accept the amendment. The Committee agreed to the Lewis amendment by voice vote. Mr. Daschle and Mr. Lewis discussed the question of cropland that has been flooded and later reclaimed. Mr. Daschle stressed that the amendment would not affect the use of this land because if production was underway at any time in the past, the land would be grandfathered.

H.R. Rep. 99-271 (Pt. 1) at 419, 99th Cong. 1st Sess. (1985). This implies that Rep. Daschle thought that the version of the statute under consideration in 1985 allowed previously

converted wetlands to be re-converted later without penalty. What that has to do with the interpretation of an amendment 11 years later is a mystery. The 1985 legislation lacked any counterpart to §3822(b)(2)(D); Rep. Daschle could not have been trying to pin down the antecedent of "that date" in a bill whose drafting lay far in the future. The district judge also did not explain why one representative's view would trump that of the Cabinet official to whom administration has been delegated. If agencies and legislators read ambiguous language differently, the agency wins under *Chevron*. When Congress delegates to the Executive Branch a power of interpretation, it surrenders any opportunity to rule the outcome via statements in committee. See, e.g., *American Hospital Ass'n v. NLRB*, 499 U.S. 606 (1991). Cf. *United States v. Mead Corp.*, 533 U.S. 218 (2001). Thus the Secretary's reading would prevail even had the statement been contemporaneous with the statute's enactment. Cf. *Continental Can Co. v. Chicago Truck Drivers Pension Fund*, 916 F.2d 1154 (7th Cir. 1990).

This conclusion brings to the fore Horn Farms' contention that Congress lacks authority to make subsidies contingent on preserving wetlands. Such a tie between the agricultural subsidy and leaving wetlands alone is impermissibly coercive, Horn Farms insists, and oversteps Congress' authority under Article I §8 cl. 1 of the Constitution. He relies principally on Justice O'Connor's conclusion in *South Dakota v. Dole*, 483 U.S. 203, 212-18 (1987) (dissenting opinion), that the spending power may not be used in a way that coerces states to surrender fundamental attributes of their sovereignty. Beyond the fact that Justice O'Connor wrote for herself alone is the fact that Horn Farms is not a governmental body and lacks any sovereignty that can be trampled upon. Anyway, if it is unduly "coercive" to link agricultural subsidies to how the farmer uses (or misuses) agricultural land, it must be unduly "coercive" to link the subsidy to the agricultural product. A farmer can't get

federal payments for growing (or not growing) soybeans, without actually growing the soybeans or allowing the land to lie fallow. The sort of argument Horn Farms presses would demolish, not the Swampbuster legislation, but the whole system of agricultural subsidies, and indeed all federal legislation (including tax credits and deductions) linking financial rewards to the satisfaction of conditions. Horn Farms could not gain from such a decision.

The majority in *South Dakota* identified three potential limitations on the spending power: conditions set on expenditures must (i) promote the general welfare, (ii) be unambiguous (at least when they affect states), and (iii) relate to a legitimate federal interest. 483 U.S. at 207-08. The first and third of these come to the same thing and don't help Horn Farms, which does not deny that preservation of wetlands (which support migratory birds and other wildlife) promotes a legitimate federal interest and thus a plausible conception of the general welfare—a subject on which the legislature's assessment is all but conclusive. See *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316 (1819). As for the second: the statute is as clear as can be. Even the scholars most skeptical of Congress' use of conditional spending to achieve substantive goals would not think this legislation problematic. See Laurence Claus, "*Uniform Throughout the United States*"*: Limits on Taxing as Limits on Spending*, 18 Const. Commentary 517 (2001); Lynn A. Baker, *Conditional Federal Spending After Lopez*, 95 Colum. L. Rev. 1911 (1995). No surprise, then, that we thought this legislation to be within national power the last time it was challenged. See *United States v. Dierckman*, 201 F.3d 915, 922-23 (7th Cir. 2000). Horn Farms developed the conditional-spending point more fully than did the parties in *Dierckman* (our treatment there was correspondingly succinct), but a more elaborate argument does not affect our resolution. This makes it unnecessary to determine whether the legislation could be supported at any event by the

national commerce power. See *Wickard v. Filburn*, 317 U.S. 111 (1942).

What we have said so far fully resolves the parties' disputes. But the district court went further; actually the district court *began* with a constitutional decision that did not affect its judgment. The district court stated that the Swampbuster legislation offends the due process clause of the fifth amendment because it does not afford farmers adequate opportunities for administrative review of the district conservationist's conclusion that particular wetlands had been converted to farm use on particular dates. 319 F. Supp. 2d at 912-16. The judge did not explain why he considered a constitutional issue first, when challenges to statutes' validity should be entertained only as a last resort. See *Jean v. Nelson*, 472 U.S. 846, 854 (1985); *ISI International, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir. 2001). As the judge later determined that the dates of conversion, reversion, and reconversion do not matter (provided that the original conversion occurred before December 23, 1985), it was unnecessary, on his understanding of §3822(b)(2)(D), to consider the adequacy of the procedures used to determine those dates. Constitutional adjudication is unnecessary on our view of that statute as well: the timing question is whether the converted ground was a wetland on December 23, 1985. This, too, is uncontested. So the agency did not need to offer Horn Farms *any* procedures to find facts, for there were no material disputes. A hearing was no more essential before the agency than it was in the district court—which granted summary judgment without offering an evidentiary hearing. So we let the due process issue pass without further analysis. The Secretary contends that the district judge misunderstood how state and federal agencies determine contested factual issues under the Swampbuster legislation, but this topic we need not explore. It is enough to say that the district court's constitutional analysis in this litigation lacks any precedential force.

At the close of its opinion, the district judge stated that the Secretary's removal of Horn Farms' subsidy violated 5 U.S.C. §558, a part of the Administrative Procedure Act, because it deprived Horn Farms of a "license" without the procedures required by that subsection. 319 F. Supp. 2d at 921-23. On the district court's view this was irrelevant, because Horn Farms is entitled to prevail independent of any procedural shortcomings. Moreover, the district court's understanding of §558 made its constitutional ruling doubly gratuitous, because the court purported to invalidate a set of procedures that, given its conclusion about §558, did not apply to Horn Farms in the first place. Because we have sided with the Secretary on substance, however, §558 might offer an alternative ground for relief—if not an award of the subsidy that Horn Farms wants, at least for a remand at which it would be given an "opportunity to demonstrate or achieve compliance with all lawful requirements." 5 U.S.C. §558(c)(2).

It is not clear to us that Horn Farms wants that opportunity, which would mean a chance to turn the 6.2 acres back into wetlands. Since the Swampbuster legislation itself offers that opportunity, see 16 U.S.C. §1622(i), which Horn Farms spurned, it is hard to see what role §558 could serve. But, just in case, we add that the district judge's understanding of §558 is mistaken. It deals with procedures to be followed in connection with any "application . . . for a license required by law". Horn Farms did not "apply" for a "license." It wants a check drawn on the Treasury, not a license—for it does not need any federal official's permission under Swampbuster either to engage in farming or to drain wetlands. It is free to do as much of either as it wants (subject to other legal constraints). Procedures to be used for resolving disputes about whether land was wetlands, and when conversions occurred, are provided in the Swampbuster legislation and the implementing regulations, independent of the APA.

That a farmer's acts have financial consequences no more makes a subsidy a "license" than it would make sense to say that, because a taxpayer cannot claim the child-care credit without actually having a child, the United States has established a "licensing" requirement to bear or raise children. Similarly the fact that a mortgage-interest deduction becomes unavailable if the IRS concludes that the taxpayer no longer has a mortgage does not mean that one needs a license to borrow money on the security of real estate. Doubtless §558 should be read so that it encompasses all situations in which federal approval is required to undertake some act—even if the document is called a "permit" or "certificate of public interest, convenience, and necessity" rather than a "license." See 5 U.S.C. §551(8) (defining a "license" as "the whole or a part of an agency permit, certificate, approval, registration, charter, membership, statutory exemption or other form of permission"); see also, e.g., *Bullwinkel v. Department of Transportation*, 787 F.2d 254, 256 (7th Cir. 1986) (pilots' medical certificates); *Gallagher & Ascher Co. v. Simon*, 687 F.2d 1067, 1072 n.5 (7th Cir. 1982) ("term special permits" required to import certain merchandise); *Anchestegui v. Department of Agriculture*, 257 F.3d 1124, 1129 (9th Cir. 2001) (cattle grazing permit). But when no agency stands as a gatekeeper to a proposed private activity, there is no "license" either.

The judgment is reversed, and the case is remanded with instructions to enter judgment against Horn Farms.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*