RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 15a0058p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

MAPLE DRIVE FARMS LIMITED PARTNERSHIP,

*Plaintiff*,

NICHOLAS H. SMITH,

*Plaintiff-Appellant*,

*v.*

TOM VILSACK, Secretary, United States Department
of Agriculture,

*Defendant-Appellee*.

No. 13-1091

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:11-cv-00692—Robert J. Jonker, District Judge.

Argued: October 10, 2013

Decided and Filed: April 1, 2015

Before: BOGGS and SUTTON, Circuit Judges; and CLELAND, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Bradley L. Smith, ENDURANCE LAW GROUP PLC, Jackson, Michigan, for
Appellant. Michael L. Shiparski, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids,
Michigan, for Appellee. **ON BRIEF:** Bradley L. Smith, ENDURANCE LAW GROUP PLC,
Jackson, Michigan, for Appellant. Michael L. Shiparski, UNITED STATES ATTORNEY'S
OFFICE, Grand Rapids, Michigan, for Appellee.

---

[*]The Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting
by designation.

—————————

**OPINION**

—————————

BOGGS, Circuit Judge.  The "Swampbuster" provisions of the Food Security Act of 1985 deny certain farm-program benefits to persons who convert a wetland on their property for agricultural purposes.  Nicholas H. Smith challenges the United States Department of Agriculture's determination that Smith had converted 2.24 acres of wetland on his property and that he is, consequently, totally ineligible for program benefits.  Specifically, Smith contends that the Department erred when it failed to: (1) analyze whether his purported conversion would have only a minimal effect on surrounding wetlands, a finding that would exempt him from ineligibility; (2) consider relevant factors that would reduce his penalties; and (3) exempt Smith's parcel on the ground that it was originally converted from wetland and farmed prior to the statute's passage.  The district court denied relief.  Because USDA acted without abiding by applicable regulations, we reverse the judgment of the district court and remand with instructions to remand to USDA for further proceedings consistent with this opinion.

**I. Background**

**A. Statutory and Regulatory Background**

The conservation title of the Food Security Act of 1985 denies agricultural benefits to farmers who convert wetlands or who farm converted wetlands.  This regime, known as "Swampbuster," targets both farmers who "produc[e] an agricultural commodity on converted wetland," 16 U.S.C. § 3821(a), and those who "conver[t] a wetland by draining, dredging, filling, leveling, or any other means for the purpose, or to have the effect, of making the production of an agricultural commodity possible on such converted wetland," § 3821(d).[1]

—————————

[1]Congress amended 16 U.S.C. § 3821 after we held oral argument in this case, but the amendment is not relevant here.  *See* Agric. Act of 2014, Pub. L. No. 113-79, § 2611(b), 128 Stat. 649, 763–66 (2014).  The 2014 amendment had two effects: it relabeled subsections (c), (d), (e) as subjections (d), (e), and (f), respectively, and it also inserted a new subsection (c).  The new subsection denies payment of crop-insurance premiums to farmers who convert wetlands or who farm converted wetlands.  But this subsection does not apply to wetlands that the Secretary determines were "converted prior to the date of enactment of the Agricultural Act of 2014." § 3821(c)(2)(C).

The Act provides a number of exemptions from the ineligibility provisions.  Relevant to this case are two exemptions.  One, added to the Act in 1996, exempts farmers who convert:

> A wetland previously identified as a converted wetland (if the original conversion of the wetland was commenced before December 23, 1985), but that the Secretary determines returned to wetland status after that date as a result of—
>
>> (i) the lack of maintenance of drainage, dikes, levees, or similar structures;
>> (ii) a lack of management of the lands containing the wetland; or
>> (iii) circumstances beyond the control of the person.

§ 3822(b)(2)(D); *see* Fed. Agric. Improvement & Reform Act of 1996, Pub. L. No. 104-127, § 322(b), 110 Stat. 888, 988–89 (1996).  The second, contained in the original 1985 Act but significantly amended in 1990 and 1996, exempts farmers whose wetland conversion "will have a minimal effect on the functional hydrological and biological value of the wetlands in the area, including the value to waterfowl and wildlife."  § 3822(f)(1); *see* Fed. Agric. Improvement & Reform Act of 1996, § 322(d), 110 Stat. at 990; Food, Agric., Conservation, & Trade Act of 1990, Pub. L. No. 101-624, § 1422, 104 Stat. 3359, 3574–75 (1990); Food Security Act of 1985, Pub. L. No. 99-198, § 1222(c), 99 Stat. 1354, 1508 (1985).

Even if a farmer does not qualify for these exemptions, the United States Department of Agriculture (USDA) retains discretion to reduce the ineligibility penalties for farmers who convert wetlands, in lieu of depriving those farmers of program benefits altogether.  "Factors such as" the following "shall be considered [in] making this determination":

> the information that was available to the affected person prior to the violation, previous land use patterns, the existence of previous wetland violations under this part or under other Federal, State, or local wetland provisions, the wetland values, acreage, and functions affected, the recovery time for full mitigation of the wetland values, acreage, and functions, and the impact that a reduction in payments would have on the person's ability to repay a USDA farm loan.

7 C.F.R. § 12.4(c).

**B. Factual Background**

Nicholas H. Smith[2] owns a 50-acre field in Hillsdale County, Michigan. He has personally farmed the land for over fifty years. This case concerns a 2.24-acre parcel on the land.

**1. Pre-2008 Activity on the Parcel**

In November 1961, Smith and the Soil Conservation Service[3] formed an agreement, titled "Soil and Water Conservation Plan," under which the agency would assist Smith in executing a conservation plan for the property. In the agreement, Smith affirmed that he "want[ed] to farm the conservation way" and sought "assistance in working out, putting into effect and maintaining the conservation practices needed on [the] farm." The agency approved and helped finance a tile-drainage system to remove excess water and moisture from the 2.24-acre parcel on Smith's land.[4] In 1964, Smith installed drainage tile with cost-share funding from USDA's Agricultural Stabilization and Conservation Service.[5]

Smith, with the help of USDA, successfully drained the parcel and grew commodity crops on the parcel at least through 1982.[6] During this time, the Natural Resources Conservation Service (NRCS), an arm of USDA, provided Smith with technical assistance to implement the conservation plan. In the early 1980s, drainage through the parcel began to deteriorate, perhaps because of the drainage tile's collapse or blockage.

The administrative record contains annual aerial photos of the parcel from 1979 through 2003 and also for 2005. USDA states that these photos show both that, at least as early as 1979,

---

[2]Maple Drive Farms Family Limited Partnership, in which Smith owned a controlling interest, was also a plaintiff in the district court. The partnership deeded the parcel at issue to Smith, and it dissolved on December 31, 2012.

[3]The Soil Conservation Service was the former name of the Natural Resources Conservation Service, the USDA agency charged with making wetland determinations. *See* 7 C.F.R. §§ 12.6(c), 12.30(c).

[4]The parcel at issue is located on what USDA classifies as Field 13, Tract 51900, Farm 4290.

[5]The Agricultural Stabilization and Conservative Service was the former name of the Farm Service Agency, the USDA agency charged with monitoring violations of the Food Security Act and determining program eligibility. *See* 7 C.F.R. § 12.6(b).

[6]One farm worker stated in a notarized declaration that in the "early 1970s" he planted "alfalfa, with maybe some brome and ladino" in the area and that the "low spot produced good alfalfa hay." Another worker stated that that he "seeded the entire field" in the 1970s and did not recall any wet spots. A third worker stated that he "combin[ed] wheat in that field once in the early or mid 1980s" and that he "did not go around any wet spots."

the parcel had standing water and a consistent presence of woody overgrowth and also that the parcel's verdant nature differed from that of the surrounding cropland. The parties do not dispute that by 1985—the year that Congress enacted the Swampbuster provisions—the parcel had returned to a wetland condition. In June 1988, USDA determined that a wetland existed on Smith's property, and it informed Smith of this. In September 1993, USDA again determined that a wetland existed and again informed Smith.[7]

In the 1980s and 1990s, Smith repeatedly attempted to repair the drainage tile. He was unsuccessful. In September 2008, Smith purchased a specialized backhoe to facilitate repairing the drainage tile.

## 2. Post-2007 Activity on the Parcel

On October 27, 2008, Smith filed an "AD-1026" form with USDA indicating his intent to "[c]reate new drainage systems, or conduct land leveling, filling, dredging, land clearing, or stump removal." Smith also indicated that his intent was not to modify "existing drainage" or to "maintain an existing drainage system." By signing this form, Smith agreed "[not] to convert wetlands" and to allow USDA to enter and inspect his farm.

On October 30, 2008, NRCS notified Smith that it designated the 2.24-acre parcel as a wetland.

On November 14, 2008, Smith requested that NRCS reconsider its determination and asked to set a date to meet with the district conservationist to discuss the issue. He informed NRCS that he had originally installed drainage tile and planted the parcel in the 1960s, and he offered to provide evidence. On November 22, 2008, Smith also requested to mediate the dispute.[8]

On November 25, 2008, G.L. Kinter, an NRCS investigator, conducted a wetland analysis on Smith's property. Kinter analyzed the vegetation, hydrology, and soils of the parcel

---

[7]The record is unclear as to whether Smith received the 1988 and 1993 determinations.

[8]Smith included the following handwritten note on his request: "While I was in government service ([Michigan] Senate, 1978 – [United States] Congress, 2005), the farm operator (and I) didn't fix a tile blow out—resulting in a 1/10 acre wet spot. The area has been farmed since 1940's and since 1985 except for that small puddle and growing brush."

at two different transects.  The record also contains several photographs taken of Smith's property on November 25.[9]

The following day, on November 26, 2008, NRCS notified the Michigan Agricultural Mediation Program that it agreed to mediate the dispute with Smith.  Subsequently, on December 12, 2008, NRCS issued a "final technical determination" that classified the 2.24-acre parcel as "manipulated wetland."  On January 6, 2009, the Dispute Resolution Center of West Michigan notified Smith and NRCS that it would conduct a mediation session on January 28, 2009, at the Hillsdale County NRCS office.

On January 28, 2009, Smith and NRCS executed a mediation agreement.  NRCS agreed to provide a wetland delineation and to provide Smith with advance notice of the date of the site visit to allow Smith to attend.  NRCS also agreed to allow Smith to plant the field in the spring, so long as Smith did not remove trees.[10]  Both parties agreed to keep mediation open pending completion of the wetland delineation.  Gary Rinkenberger, the NRCS appeals and mediation coordinator for Michigan, signed the agreement on behalf of NRCS.  The parties agree that on the following day, January 29, 2009, Smith spoke by phone with Jason Wheeler, the NRCS district conservationist, and Wheeler permitted Smith to cut down trees so long as Smith did not remove any stumps.[11]

Following the mediation session, Smith and NRCS exchanged correspondence to find a mutually agreeable date for NRCS to conduct the wetland delineation.  In a March 23, 2009, letter, NRCS informed Smith that it would conduct the delineation on April 7, 2009.  On March 28, 2009, Smith responded, stating that he would be out of state on that date; he indicated that he

---

[9]Additionally, the record contains several photographs taken of Smith's property on November 4, 2008. The government states that Jason Wheeler, the district conservationist, took the photos. Appellee Br. 10.  But it is unclear why NRCS was on Smith's property on November 4.  NRCS issued its initial wetland determination on October 30, and Smith did not request reconsideration until November 14.

[10]The mediation agreement stated: "Parties agree that the field involved can be planted this spring as long as no trees are removed."

[11]The government notes that under then-existing agency guidance, "[t]rees cut with stumps left in place" was a sign of a "manipulated wetland" rather than a "converted wetland." *See* Appellee Br. 12.  Under the current version of the same guidance, the relevant indication of a merely "manipulated wetland" is: "Piles of trees, stumps, and soil cover an area, but the area cannot be cropped without additional land-clearing activities." National Food Security Act Manual (5th ed.), Title 180, Part 514.11(B)(ii), *available at* http://directives.sc.egov.usda.gov/default.aspx (select "Manuals").

could accommodate a date after June 21, 2009. On April 9, 2009, NRCS proposed either June 22 or 23, 2009. On April 20, 2009, Smith agreed to a June 23, 2009, delineation.

That spring, prior to the NRCS wetland delineation, Smith farmed the parcel pursuant to the mediation agreement. Specifically, he cut down trees and mowed, plowed, tilled, and planted the land. He left stumps in place. In an area of the parcel that the parties refer to as the "northern neck," Smith also filled in a ditch. Smith believed that his alteration to the northern neck was permitted because it was not a wet spot, as it sat at a significantly higher elevation.

On June 23, 2009, NRCS returned to Smith's property, as agreed upon, to conduct the wetland delineation. William Bowman, an NRCS investigator and soil scientist, analyzed the vegetation, hydrology, and soils. On July 24, 2009, NRCS notified Smith that "accurate delineation of the wetland was not possible" because of significant alterations to the land since its prior site visit in November 2008. NRCS stated:

> With the exception of some stumps from large trees that remain in the periphery of the wetland area, all woody vegetation within the wetland has been cleared and planted to a commodity crop. Additionally, there is evidence of the placement of fill in the north portion of the wetland, which has also been planted to a commodity crop.

Because Smith's activities resulted in "making production of a commodity crop possible, where it was not possible" previously, NRCS re-designated the parcel as "converted wetlands." NRCS did not claim that Smith removed stumps or otherwise violated the January 28, 2009, mediation agreement. Nor did it reference the clause in the mediation agreement that stated: "the field involved can be planted this spring."

Subsequently, NRCS notified the Farm Service Agency (FSA) that the 2.24-acre parcel on Smith's property constituted a converted wetland. The purpose of doing so was to allow FSA to determine Smith's eligibility for USDA program benefits.

On August 4, 2009, the Hillsdale County FSA executive director informed Smith that his wetland conversion rendered him indefinitely ineligible for $42,528 in annual USDA benefits.

### 3. Smith's Administrative Appeals

### a. Initial Steps

From 2009 to 2011, Smith pursued two different appeals with USDA's National Appeals Division (NAD): NRCS's wetland determination and FSA's benefit-ineligibility determination.

Initially, on August 27, 2009, Smith wrote to the National Appeals Division to appeal both NRCS's converted-wetland determination and FSA's benefit-ineligibility determination.[12] On August 28, 2009, the National Appeals Division docketed Smith's appeal of the NRCS decision as Case No. 2009E000846 and notified the parties that it had assigned Hearing Officer Robert Mulholland to the matter. Additionally, the National Appeals Division notified Smith that his appeal of the FSA decision was premature because Smith first needed to seek review with the FSA's Hillsdale County Committee. On September 1, 2009, the county committee notified Smith that it would proceed with a review of FSA's benefit-ineligibility decision.

In addition to pursuing formal appeals of the agency decisions, Smith also notified the mediator that he wished to reopen the mediation with NRCS. On September 22, 2009, the National Appeals Decision agreed to suspend Smith's NRCS appeal to allow the parties to pursue mediation.

On September 15, 2009, Smith appeared before the FSA's Hillsdale County Committee to contest the benefit-ineligibility decision. The committee consisted of the executive director, who had issued the decision denying Smith benefits, and three other members. According to the hearing minutes, Smith "voiced his frustration with the process thus far." The committee informed Smith that it could not reverse the benefit-ineligibility decision so long as NRCS classified the parcel as converted wetland. The committee also suggested to Smith that it could not conduct an informal review because of Smith's pending mediation of the NRCS converted-wetland determination. On September 23, 2009, the county committee informed Smith that it officially upheld the decision of the executive director to deny benefits.

---

[12]Smith's original letter omitted the portion of a page because of a printing error. Consequently, on September 2, 2009, Smith resubmitted his earlier letter in its entirety.

On October 14, 2009, Smith and NRCS conducted another mediation session regarding the converted-wetland determination. At the mediation, Smith presented NRCS with an extensive report by an independently retained wetlands expert that purported to show that Smith's activity on the parcel had a minimal effect on wetlands in the area. Smith states (and USDA does not dispute) that NRCS refused to accept, consider, or even read his expert's report. Appellant Br. 15. The parties were unable to reach an agreement.

On October 21, 2009, Smith informed the National Appeals Division both that the county committee upheld FSA's ineligibility determination and also that mediation with NRCS failed. Smith stated that he was "anxious to resolve this matter," and he requested that the National Appeals Division consolidate his NRCS and FSA appeals. On October 26, 2009, the National Appeals Division reinstated Smith's NRCS appeal and notified him that it docketed his FSA appeal as Case No. 2010E000063. On November 3, 2009, Smith again requested that the National Appeals Division consolidate his two appeals "because the wetland and ineligibility determinations are inextricably linked." On November 6, 2009, the National Appeals Division declined to consolidate Smith's two appeals because "the decisions under appeal have been issued by two different USDA Agencies."

On December 16, 2009, and continued on January 7, 2010, the National Appeals Division conducted a formal hearing on Smith's two appeals. After the record in each case closed on January 28, 2010, Hearing Officer Mulholland requested an extension of time to issue decisions because of the "complexity of the issues" and "the extensive amount of documentation."[13]

### b. The Hearing Officer's Decisions

On March 12, 2010, Hearing Officer Mulholland issued a decision in each appeal. In Smith's NRCS appeal, the hearing officer found that that the 2.24-acre parcel qualified as converted wetland under the criteria of 7 C.F.R. § 12.32(a). *See Smith v. Natural Res. Conservation Serv.*, Case No. 2009E000846 (Mar. 12, 2012).[14] The hearing officer stated that he "considered [Smith's] argument [that] the mediation agreement was being followed" when

---

[13]The administrative record in this case is over 1,000 pages.

[14]The opinion is available online at https://usda-nad-local.entellitrak.com/etk-usda-nad-prod/page.request.do?page=page.searchDeterminations.styled (enter case number).

Smith altered and planted the parcel, but the hearing officer did not state why this defense failed or how Smith violated the agreement. Additionally, the hearing officer stated that he considered Smith's argument that the converted wetland has only a minimal effect on surrounding wetlands. The hearing officer noted that, under 7 C.F.R. § 12.31(d), a farmer who seeks a minimal-effect determination *after* converting wetland bears the burden of demonstrating to NRCS's satisfaction that the effect was minimal. But the hearing officer did not state why Smith failed to meet his burden or whether NRCS ever considered Smith's minimal-effect evidence. Further, the hearing officer determined that Smith did not qualify for the "prior converted wetland" exemption under § 3822(b)(2)(D) because the parcel had returned to wetland status before December 23, 1985.

In Smith's FSA appeal, the hearing officer found that because NRCS concluded that Smith had converted wetland, FSA properly deemed Smith ineligible for USDA benefits pursuant to 7 C.F.R. § 12.4(c). *See Maple Drive Farms Family P'ship v. Farm Serv. Agency*, Case No. 2010E000063 (Mar. 12, 2010).[15] The hearing officer stated that he "considered [Smith's] argument that [the] Agency had not exercised its discretionary authority to reduce the denial of benefits either monetarily or in length of time." But the hearing officer never stated whether FSA considered a reduction in benefits in lieu of total ineligibility. Further, the hearing officer stated that to qualify for a benefit-ineligibility exemption, Smith must "comply with the requirements to restore the function and values of the wetland or a new wetland (through mitigation)."

### c. The Deputy Director's Decisions

On April 14, 2010, Smith pursued his appeals further by seeking review of the hearing officer's decisions with the Director of the National Appeals Division. The parties articulated their positions in several letters to the Director. On June 25, 2010, Smith inquired about the status of his appeal, writing that "the unresolved status has introduced great uncertainty" and "affected planting and crop management practices."

---

[15]This opinion is also available online at the address provided above. *See supra* note 14.

In July 2010, NAD deputy director M. Terry Johnson issued two decisions.[16] In Smith's NRCS appeal, the deputy director upheld the hearing officer's determination. The deputy director accepted that Smith believed "that he had the right to clear out a 45-year-old drainage system, and that the mediation agreement gave him permission to crop the land." *Smith v. Natural Res. Conservation Serv.*, Case No. 2009E000846 (July 23, 2010).[17] Nonetheless, the deputy director concluded that Smith "proceeded at his own risk when he removed woody vegetation, placed fill in an area considered a wetland and planted corn, thereby altering the land well beyond the condition NRCS had considered manipulated." The deputy director stated that because the mediation agreement "specifically contemplated a delineation process to sort out the wetland from the non-wetland, [Smith's] wholesale conversion of the parcel to agricultural use was premature." Additionally, the deputy director addressed Smith's argument that he qualifies for a minimal-effects exemption. The deputy director stated: "It does not appear [Smith] has sought such a determination yet, although he did present his [expert's] report to NRCS." The deputy director also stated that NRCS did, in fact, consider whether Smith qualified for a minimal-effect exemption and that it determined that Smith's property does not qualify.

The National Appeals Division notified Smith that the deputy director's determination in the NRCS appeal was a USDA "final order" and "conclude[d] all administrative processing" of the appeal.

In Smith's FSA appeal, however, the deputy director reversed the hearing officer's determination because it was "not consistent with applicable regulations." *Maple Drive Farms*, Case No. 2010E000063 (July 28, 2010).[18] The deputy director found that the hearing officer failed to address Smith's argument that 7 C.F.R. § 12.4(c) provides that a farmer may be ineligible for "all or a portion of" USDA benefits. The deputy director found that Smith requested that FSA consider reducing the amount of the withheld benefits, that Smith provided the FSA Hillsdale County Committee with evidence about his relationship with USDA, and that the county committee's response "was that it could do nothing" for Smith. The deputy director

---

[16]The decisions were issued by the NAD deputy director, but this stage in the administrative-appeal process is referred to as Director review.

[17]The opinion is available online at the address provided above. *See supra* note 14.

[18]The opinion is available online at the address provided above. *See supra* note 14.

concluded that the county committee "should have considered [Smith's] evidence with relation to the factors in paragraph 737B [of the FSA Handbook] and made a determination as to whether to recommend relief" to the agency deputy administrator.

### d. Remand to FSA

On September 15, 2010, the FSA Hillsdale County Committee again considered Smith's request for partial relief from the withholding of USDA benefits. It denied Smith's request.

On November 9, 2010, the FSA Hillsdale County Committee held an informal hearing to reconsider whether it should recommend a reduction in Smith's penalties. The county committee noted that paragraph 737B of FSA Handbook 6-CP provided a list of factors to consider in determining whether relief from total ineligibility is warranted. According to the minutes of the hearing, the county committee asked Smith whether he would consider mitigation by designating another portion of his property as wetland. Smith replied "that NRCS stated he would have to mitigate up to 2 times the size and register it as a permanent easement." A member of Smith's family told the committee that she felt "somewhat betrayed and over-policed on the issue." Smith told the committee that "he was agonized by the perception that [his family was] cheating on conservation practices" and that his family had always "been very conscious of conservation."

The county committee "noted that the mediation agreement was not detailed and could have been misinterpreted." It also noted that denying Smith all USDA benefits "may adversely affect good conservation practices" because of the total amount of Smith's cropland. The county committee also noted that the wetland violation at issue involved less than 0.2 percent of Smith's cropland.

On November 22, 2010, the Hillsdale County Committee issued a recommendation to the Michigan state FSA office, requesting "that some relief of penalties be granted for the violation." The county committee stated that "the loss of benefits may adversely affect good conservation practices."

On December 15, 2010, the Michigan state FSA office issued its own recommendation to Brandon Willis, the FSA deputy administrator for farm programs. The state FSA committee disagreed with the county committee and declined to support Smith's request for partial relief.

The state committee stated that it "felt that [Smith] was well aware of [his] ability to regain USDA benefits through wetland mitigation." The state committee did not address the factors in either 7 C.F.R. § 12.4(c) or paragraph 737B of FSA Handbook 6-CP regarding whether relief from total ineligibility is warranted.

On March 30, 2011, the FSA deputy administrator notified the Michigan state FSA office that it did not approve Smith's request for a partial relief from the penalties. The deputy administrator stated that Smith could not receive USDA benefits unless "the wetland is . . . restored or mitigated." The deputy administrator quoted at length from 7 C.F.R. § 12.5(b)(5), which provides a separate ineligibility exemption for certain farmers who act in good faith. The deputy administrator wrote:

> I have carefully reviewed the county committee request to reduce program payment ineligibility in the absence of both good faith and the restoration or mitigation of the converted wetland. Given the circumstances of this case, reduction of ineligibility according to CFR § 12.5(b)(5) and 6-CP, paragraph 737, is inappropriate. The submitted information shows that although Maple Drive Farms is aware of the need to restore or mitigate the converted wetland to regain eligibility for the USDA benefits, it has no intention to do so and, in fact, Maple Drive Farms has expressed an intention to continue cropping the converted wetland. Clearly, Maple Drive Farms is able to restore or mitigate the wetland, but is unwilling to do so.

On April 7, 2011, the FSA Hillsdale County executive director notified Smith that FSA had issued its final determination that Smith was totally ineligible to receive USDA program benefits. The executive director informed Smith that FSA determined that "a full reduction of benefits for the wetland violation is appropriate."

On July 1, 2011, Smith filed suit in federal district court for judicial review of NRCS's wetland determination and of FSA's benefit-ineligibility determination. *See Maple Drive Farms Family Ltd. P'Ship v. Vilsack*, No. 1:11-CV-692, 2012 WL 6212905 (W.D. Mich. Dec. 13, 2012). The district court denied relief and upheld both agency determinations, *see id.* at *13, and it denied Smith's motion for reconsideration, Order at 3, *Maple Drive Farms Family Ltd. P'ship v. Vilsack*, No. 1:11-CV-692 (Jan. 11, 2013).

## II. Analysis

Smith raises three claims on appeal: (1) he is exempt from ineligibility under 16 U.S.C. § 3822(b)(2)(D)'s prior-converted-wetland exemption; (2) he also qualifies for 16 U.S.C. § 3822(f)(1)'s minimal-effect exemption but NRCS failed to consider his minimal-effect evidence, in violation of law; and (3) FSA acted arbitrarily in declining to consider his request for a penalty reduction in accordance with the 7 C.F.R. § 12.4(c) factors.

### A. Prior-Converted-Wetland Exemption

The Food Security Act exempts farmers from its ineligibility provisions if they convert a "wetland previously identified as a converted wetland (if the original conversion of the wetland was commenced before December 23, 1985), but that the Secretary determines returned to wetland status after that date" as a result of, inter alia, failure to maintain drainage. § 3822(b)(2)(D).

Smith and USDA interpret the phrase "after that date" differently. Smith maintains that the exemption applies to farmland that was converted at one point in time and subsequently reverted to wetland status, regardless of whether the land was wetland on December 23, 1985. Smith reads the statute as if the final clause said "but that the Secretary determines returned to wetland status after that *identification*," referring to the preceding phrase "previously identified as a converted wetland." USDA argues, on the other hand, that the converted-wetland exemption applies "where the conversion occurred prior to December 23, 1985, an agricultural commodity had been produced at least once before December 23, 1985, and as of December 23, 1985, the converted wetland did not support woody vegetation and met [certain] hydrologic criteria." 7 C.F.R. § 12.2(a).

The language is admittedly an example of inartful statutory drafting. Both interpretations are sensible. *See Horn Farms, Inc. v. Johanns*, 397 F.3d 472, 475 (7th Cir. 2005) ("Section 3822(b)(2)(D) is ambiguous."). Under Smith's reading, the exemption applies to prior-converted wetland that returns to wetland status after the date on which it was previously designated as converted wetland. Under the agency's reading, the exemption applies to prior-converted

wetland that returns to wetland status after December 23, 1985.  In the agency's view, December 23, 1985, is the crucial date on which to determine whether a parcel is wetland.

The crux of Smith's argument is that the phrase "that date" cannot refer to December 23, 1985—contained in parentheses—because parentheses are used only for nonessential material. "'That date,'" Smith argues, "must refer to the subsection's only antecedent date outside the parenthetical"—the date the wetland was previously identified as converted.  Appellant Br. 30. This argument is not without force.  "No intelligent construction of a text can ignore its punctuation."  Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 161 (2012).

The agency's view is that "that date" refers to December 23, 1985, the nearest reasonable referent.  We have previously honored the last-referent presumption and recognized that under the presumption, "qualifying phrases attach only to the nearest available target."  *In re Sanders*, 551 F.3d 397, 399 (6th Cir. 2008).  Moreover, "December 23, 1985" is not just the *last* date mentioned in the statutory text; it is the *only* date expressly referenced.  For this reason and others, the Seventh Circuit found USDA's reading to be more persuasive.  *See Horn Farms*, 397 F.3d at 475–46 (offering four reasons why USDA's "interpretation not only is reasonable but also is the most sensible").

Smith and USDA discuss case law, statutory purpose, legislative intent, and relevant agency regulations in support of their respective interpretations of "that date."  In resolving this dispute, we defer to the agency's interpretation of the statute.  *See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984); *Horn Farms*, 397 F.2d at 476 (applying *Chevron* deference to USDA's interpretation of the statute).

Because we here interpret "an agency's construction of the statute which it administers," we first must determine "whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842.  It has not.  The statute being "ambiguous with respect to the specific issue," we then must determine whether "the agency's answer is based on a permissible construction of the statute."  *Id.* at 843.  "If the agency's construction is a permissible one, even if it is not 'the reading the court would have reached if the question initially had arisen in a

judicial proceeding,' then the court must defer to the agency's interpretation." *Ky. Waterways Alliance v. Johnson*, 540 F.3d 466, 474 (6th Cir. 2008) (quoting *Chevron,* 467 U.S. at 843 n.11).

We cannot say that the agency's interpretation of the statutory text is impermissible. Accordingly, we defer to USDA's interpretation of § 3822(b)(2)(D).

## B. Minimal-Effect Exemption

### 1

Farmers are also exempt from Swampbuster's ineligibility provisions for the conversion of wetland that has "a minimal effect on the functional hydrological and biological value of the wetlands in the area, including the value to waterfowl and wildlife." § 3822(f)(1). Under USDA regulations, farmers "shall not be determined to be ineligible for program benefits" if NRCS determines that their wetland conversion "would have only a minimal effect on the wetland functions and values of wetlands in the area." 7 C.F.R. § 12.5(b)(1)(v).

Smith asserts that USDA acted contrary to law when it failed to conduct an onsite functional assessment to make a minimal-effect determination. Smith quotes the statutory and regulatory language and emphasizes the repeated use of "shall" throughout. *See* Appellant Br. 21–22. For instance, the "Secretary *shall* exempt a person from the ineligibility provisions" if the minimal-effect criteria are met, § 3822(f)(1) (emphasis added); and "NRCS *shall* determine whether the effect of any" wetland conversion has a minimal effect, 7 C.F.R. § 12.31(d) (emphasis added). Smith is correct that "shall" "normally creates an obligation impervious to judicial discretion." *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998). As Smith notes, under 7 C.F.R. § 12.31(d), NRCS's minimal-effect determination "shall be based upon a functional assessment of functions and values of the wetland under consideration and other related wetlands in the area, and will be made through an on-site evaluation." NRCS conducted no onsite minimal-effect analysis at all.

Section 12.31(d) contemplates two kinds of minimal-effect determinations: one made "*prior* to the beginning of activities that would convert the wetland" and one made *after* a farmer has converted a wetland. (emphasis added). This distinction is reflected in the applicable NRCS guidance as well. *Compare* National Food and Security Act Manual (5th ed.), Title 180, Part

515.1(B) ("Minimal Effect Evaluations Before Conversion Has Occurred"), *with* Part 515.1(C) ("Minimal Effect Evaluations After Conversion Has Occurred"). Section 12.31(d) contemplates that, generally, a "request for [a minimal-effect] determination will be made prior to the beginning of activities that would convert the wetland." 7 C.F.R. § 12.31(d). But the agency is not totally relieved of its obligation when a farmer fails to request a minimal-effect determination prior to conversion. If a farmer converts a wetland "and *then* seeks a [minimal-effect] determination," the agency must still conduct an analysis. *Ibid.* (emphasis added). In this situation, though, "the burden will be upon the person to demonstrate to the satisfaction of NRCS that the effect was minimal." *Ibid.* Thus, even if a farmer converts wetland prior to seeking a minimal-effect determination, § 12.31(d) affords the farmer an opportunity to present evidence and requires the agency to consider the evidence. A farmer's ability to present evidence contemplates the agency's responsibility to consider it.

We find persuasive the Eighth Circuit's analysis of the minimal-effect exemption. In *Clark v. United States Department of Agriculture*, the Eighth Circuit noted that Congress amended 16 U.S.C. § 3822(f)—the minimal-effect provision—in 1990 by replacing the phrase "[t]he Secretary may exempt" with the phrase "[t]he Secretary shall exempt." 537 F.3d 934, 942 (2008) (citing Pub. L. 101-624, Title XIV, § 1422, Nov. 28, 1990, 104 Stat. 3573). We agree with the Eighth Circuit: "following the 1990 amendment the USDA *must grant such exemptions* where a manipulation is shown to have a minimal effect." *Ibid.* (emphasis added). In some situations, USDA's failure to conduct a minimal-effect analysis may prevent it from deeming a farmer ineligible for benefits. *See Rosenau v. Farm Serv. Agency*, 395 F. Supp. 2d 868, 874 (D.N.D. 2005) ("[B]ecause [USDA was] responsible for creating a situation in which the . . . eligibility for a minimal effect exemption cannot be determined in accordance with the controlling regulations, [USDA] should not reap the benefits of its noncompliance."); *B & D Land & Livestock Co. v. Veneman*, 231 F. Supp. 2d 895, 909 (N.D. Iowa 2002) (granting motion for preliminary injunction against USDA where sufficient evidence supported the conclusion that USDA arbitrarily failed to consider whether or not any "conversion" of the wetland in question had only a "minimal effect").

**2**

In this case, the parties disputed at the administrative-appeal stage whether Smith ever requested a minimal-effect determination. NRCS's position during the administrative appeal was that "according to 7 C.F.R. § 12.31(d) . . . there is a required procedure to request minimal effect which was not followed by [Smith]." But NRCS does not state what this "required procedure" is or explain how Smith failed to follow it. The fact is that § 12.31(d) contains no such required procedure. In contrast, the National Appeals Division deputy director rejected Smith's minimal-effect claim not because Smith failed to follow any "required procedure" but because Smith "has [not yet] sought such a determination." *Smith*, Case No. 2009E000846 (July 23, 2010). Yet the parties now do not dispute that Smith hired an independent wetland expert and that Smith presented evidence to NRCS, in the form of an expert report, that Smith's alterations to the 2.24-acre parcel had almost no effect on the surrounding wetlands. On appeal, the government now acknowledges that "Smith offered evidence at the NAD hearing that his conversion had only a minimal effect." Appellee Br. 40-41.

The government's new argument on appeal is that Smith presented his evidence, NRCS considered the evidence, and NRCS simply was not persuaded by the evidence. The government represents to the court: "The agency considered the minimal effect evidence [Smith] submitted; however, it was not sufficient to carry his burden." Appellee Br. 41.[19] The government, tellingly, cites nothing in the 1,000-page administrative record to support its claim that NRCS considered Smith's minimal-effect evidence.[20] Nor is it able to do so. Jason Wheeler, NRCS's own expert charged with evaluating Smith's 2.24-acre parcel, testified at the National Appeals Division hearing: "I did not conduct a minimal effect determination because I was not required

---

[19]In its brief, the government repeatedly represents that NRCS considered Smith's evidence—but never once with any citation to an NRCS document. *See* Appellee Br. 42-43 ("NRCS carefully considered Smith's minimal effect evidence, which is all that was required under 16 U.S.C. § 3822, and the regulations promulgated under it. The fact that Smith was not granted a minimal effect exemption does not mean that NRCS did not follow the required procedures."); *id.* at 43 ("[T]he USDA did, in fact consider a minimal effect exemption in this case."); *ibid.* ("Here, NRCS considered Smith's minimal effect evidence and determined that Smith was not eligible."); *id.* at 44 ("But once again, NRCS considered Smith's minimal effect evidence."); *id.* at 45 ("Smith offered insufficient evidence to establish that the effect of the conversion was, indeed, minimal."); *ibid.* ("Smith failed to demonstrate, to the satisfaction of NRCS, that his conversion had a minimal effect.").

[20]The government's assertion is even more troubling in light of its statement that "*Smith's contention* [that NRCS did not consider his minimal-effect evidence] is not supported by the record." Appellee Br. 41 (emphasis added).

to." There is nothing in the administrative record indicating that NRCS considered Smith's minimal-effect evidence.

**3**

NRCS's other argument, throughout both the administrative appeal and this litigation, is that the minimal-effect exemption only applies in two narrow circumstances, at least in Michigan.[21] Before the National Appeals Division, NRCS argued: "[A]ccording to [agency guidance] the State Conservationist is instructed to develop procedures for making minimal effect determinations. According to [this guidance] the [Michigan] State Conservationist has determined the procedure for minimal effect determinations." The National Appeals Division deputy director, in turn, stated: "[I]n [Michigan], there are only two categories of conversion activities that have been identified as minimal effects situations." *Smith*, Case No. 2009E000846 (July 23, 2010). Likewise, on appeal, the government argues that NRCS delegated authority to state NRCS offices to develop criteria for making minimal-effect determinations. *See* Appellee Br. 40.

An NRCS representative also testified before the National Appeals Division hearing officer that NRCS, categorically, permits minimal-effect exemptions only in two narrow situations:

> Q. Are these two situations the only two situations that the department will find a minimal effect?
> A. In Michigan.
> . . .
> A. If [farmers] fall into either one of those categories, then we will give minimal effect. Otherwise we're not authorized to provide it.
> Q. . . . I just want to make sure your testimony is clear because I think most people would be shocked to hear this, that the statute passed by Congress does not give the Agency any discretion to evaluate whether or not activity has a minimal effect except for those two [conditions]?
> A. The State Conservationist evaluated that with the State Technical Committee, and they said these are the only two minimal effects we're going to allow in Michigan . . . .

---

[21]One situation involves "the placement of a subsurface drain th[r]ough an existing wetland when it is needed to provide drainage to adjacent or upstream cropland," and the other involves "the passage of a center pivot irrigation system through a wetland."

Q. That's astounding. Okay. With that in mind, then it is your position that as a matter of law, regardless of what the facts are that [Smith's wetlands expert] gave you on the functions and value of the wetland, irrespective of any of that, you are bound as a matter of law not to consider the functional wetland values and hydrology in the area unless it falls within of those two categories? Is that your position?
A. That's my position.

The problem with the government's position is that it has no support in law. Nothing in the applicable regulations suggests that the state NRCS offices can establish a list of conditions that exhausts the universe of situations in which the agency will grant a minimal-effect exemption. The relevant federal regulation, 7 C.F.R. § 12.31(e), titled "Categorical Minimal Effect Exemptions," does call for state NRCS officials to "identify any categories of conversion activities and conditions which are *routinely determined* by NRCS to have minimal effect" on wetlands and to recommend these activities for "inclusion on a list of categorical minimal effect exemptions." But the fact that § 12.31(e) contemplates that certain situations may categorically qualify for a minimal-effect exemption does not mean that the regulation authorizes state NRCS officials to allow a minimal-effect exemption *only* in such situations. Just the opposite. Section 12.31(e)'s recognition that certain conversion activities will be categorically exempt suggests that other conversion activities will require a case-by-case determination.

The government also relies on a provision in NRCS guidance that provides: "[State NRCS officials] will develop and issue minimal effect procedures for assessing wetland functions, making minimal effect determinations, and approving exemptions." National Food and Security Act Manual (5th ed.), Title 180, Part 515.0(C). This provision, authorizing state NRCS officials to issue minimal-effect "procedures," does not support NRCS's position that it need not consider Smith's minimal-effect evidence unless his conversion activity falls into one of two narrow situations.

**4**

We set aside agency factual determinations when they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[22] 5 U.S.C. § 706(2)(A). That is a

_____

[22]We assume without deciding that 5 U.S.C. § 706(2)(A), the arbitrary-and-capricious standard, applies rather than § 706(2)(E), the substantial-evidence standard. The latter applies only to agency findings adopted

deferential standard of review. Here, however, there is no factual determination to review because NRCS did not consider Smith's minimal-effect evidence. Even after a farmer converts wetland, § 12.31(d) indicates that he can present minimal-effect evidence in order "to demonstrate to the satisfaction of NRCS that the effect was minimal." As noted above, a farmer's ability under § 12.31(d) to present evidence contemplates the agency's responsibility to consider it. We hold that NRCS's failure to consider Smith's minimal-effect evidence was "arbitrary" and "not in accordance with law." We therefore reverse the judgment of the district court and remand with instructions to remand to NRCS for further proceedings consistent with this opinion.

One final note. The district court, in dismissing Smith's minimal-effect claim, placed dispositive emphasis on Smith's refusal to mitigate. *See Maple Drive Farms*, 2012 WL 6212905, at *9–10. The district court stated, without citation to any regulation: "To qualify for a minimal effect exception, a person must also agree to a mitigation plan." *Id.* at *10. In its order denying Smith's motion for reconsideration, the district court maintained, without citation to authority, that "the issue of mitigation is at the least a fair practical consideration" and that "[o]ne proper . . . factor to consider is the presence or absence of mitigation measures." Order at 2–3, *Maple Drive Farms*, No. 1:11-CV-692 (Jan. 11, 2013). But as USDA now concedes on appeal, willingness to mitigate by imposing an easement on other acreage on one's property, or through other means, "is not an express requirement under 7 C.F.R. §12.5(b)(1)(v)." Appellee Br. 46 n.10. Nothing in the statutory or regulatory text suggests that willingness to mitigate is a factor in determining whether a farmer qualifies for a minimal-effect exemption. *See* § 3822(f)(1); 7 C.F.R. §§ 12.5(b)(1)(v), 12.31(d). Rather, the minimal-effect determination "shall be based upon a functional assessment of functions and values of the wetland under consideration and other related wetlands in the area, and will be made through an on-site evaluation." 7 C.F.R. § 12.31(d).

---

through formal adjudication or formal rulemaking. Regardless, the two tests have a tendency to converge, and the difference between the two is "largely semantic." *Ass'n of Data Processing Serv. Orgs., Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 745 F.2d 677, 684 (D.C. Cir. 1984) (Scalia, J.). The Seventh Circuit, skeptical of drawing fine lines with standards of review, has observed that "the cognitive limitations that judges share with other mortals may constitute an insuperable obstacle to making distinctions any finer than that of plenary versus deferential review." *Sch. Dist. of Wis. Dells v. Z.S. ex rel. Littlegeorge*, 295 F.3d 671, 674 (7th Cir. 2002) (Posner, J.).

## C. Penalty-Reduction Ineligibility

USDA retains discretion to reduce benefits for farmers who convert wetlands rather than deprive them of program benefits altogether. Smith contends that the Farm Service Agency erred in requiring him to restore or mitigate the converted wetland before he could qualify for a penalty reduction. *See* Appellant Br. 26–28. Smith argues that FSA failed to consider the regulatory factors relevant to a penalty-reduction determination. USDA argues that Smith may not receive *any* future USDA benefits unless he agrees to restore his land or mitigate. *See* Appellee Br. 49 ("Smith must agree to restoration or mitigation, in order to receive future USDA program benefits."). The district court held that FSA's refusal to reduce Smith's penalties was proper because of Smith's unwillingness to mitigate. *Maple Drive Farms*, 2012 WL 6212905, at *10–11.

## 1. Applicable Regulation and Guidance

Under USDA regulations, a person who converts a wetland "shall be ineligible for all *or a portion* of the USDA program benefits" subject to the wetland-conservation provisions. 7 C.F.R. § 12.4(c) (emphasis added). By its terms, the regulation allows a farmer to face partial—as well as total—exclusion from USDA programs. USDA correctly notes that landowners, once deemed ineligible, remain ineligible "until the converted wetland is restored or the loss of wetland values, acreage, and functions have been mitigated." *Ibid.* But the ineligibility may be "for all or a portion" of program benefits. *Ibid.* Thus, the regulation clearly envisions a situation in which a farmer may be subject to penalties, decline to restore land or mitigate, and still receive *some* program benefits.

Additionally, the regulation affords FSA discretion to adjust the penalties for a farmer deemed ineligible. The regulation provides that "ineligibility"—which may or may not entail total exclusion from USDA program benefits—"may be reduced, in lieu of the loss of all benefits . . . based on the seriousness of the violation, as determined by the FSA Deputy Administrator for Farm Programs or designee upon recommendation by the FSA County Committee."[23] *Ibid.*

---

[23]Properly speaking, one cannot "reduce ineligibility." "Ineligibility" is the condition or fact of being ineligible. It is not subject to reduction or increase. We assume the regulation means that FSA may reduce the *penalty* a farmer faces. As shorthand, we refer to § 12.4(c) as providing for a "penalty-reduction determination."

Section 12.4(c) provides a non-exhaustive list of six factors that "shall be considered" by the FSA deputy administrator in determining whether to reduce penalties. The deputy administrator must consider "[f]actors such as" the following:

> [1] the information that was available to the affected person prior to the violation[;]
> [2] previous land use patterns[;]
> [3] the existence of previous wetland violations under this part or under other Federal, State, or local wetland provisions[;]
> [4] the wetland values, acreage, and functions affected[;]
> [5] the recovery time for full mitigation of the wetland values, acreage, and functions[;]
> [6] and the impact that a reduction in payments would have on the person's ability to repay a USDA farm loan.

*Ibid.* Three points are worth noting about § 12.4(c)'s language. First, a farmer's penalties "*may be reduced,*" §12.4(c) (emphasis added); that is, the decision whether to reduce penalties is within the discretion of the FSA deputy administrator. Second, the phrase "*such as*" introduces the list of six factors, §12.4(c) (emphasis added); the list of factors is non-exhaustive. Here, "such" means "of this kind." Bryan A. Garner, *A Dictionary of Modern Legal Usage* 849 (2d ed. 1995). Third, factors such as those enumerated "*shall* be considered" by the deputy administrator. §12.4(c) (emphasis added). Thus, the language of § 12.4(c) indicates that although the deputy administrator need not consider the exact six enumerated factors in making the penalty-reduction determination, he must make the determination by considering factors *of the kind* enumerated.

FSA further construes § 12.4(c) in its own guidance. *See* Farm Serv. Agency Handbook 6-CP: Highly Erodible Land Conservation and Wetland Conservation Provisions (Rev. 3, Amend. 1 Nov. 29, 2006), 6-111 to 6-112. The version of the FSA Handbook in effect at the relevant time—when Smith sought penalty relief before the FSA Hillsdale County Committee in September 2009—recognized that, under § 12.4(c), "ineligibility may be reduced instead of loss of all benefits for the crop year." *Id.* at 7-111. The then-applicable handbook provided a non-exhaustive list of eight factors that "shall be considered" by FSA in making the penalty-reduction determination. *Ibid.* Six of these factors are substantively identical to those in § 12.4(c); two are additions. The two additional enumerated factors are: whether "the affected person acted

without the intent to violate [wetland conservation] provisions" and "whether there had been any previous wetland violations within the previous 5 years." *Ibid.*

## 2. Factual Background

As discussed above, Smith initially appealed FSA's ineligibility determination to USDA's National Appeals Division. On March 12, 2010, the NAD hearing officer upheld FSA's determination about Smith's ineligibility for program benefits. *Maple Drive Farms*, Case No. 2010E000063 (Mar. 12, 2010). Smith then sought further review by the NAD deputy director, who ruled for Smith. *Maple Drive Farms*, Case No. 2010E000063 (July 28, 2010). The deputy director found that the hearing officer's adverse decision was not consistent with the applicable regulation and that the FSA Hillsdale County Committee erred by failing to consider Smith's request for a penalty reduction under the 7 C.F.R. § 12.4(c) factors. *See ibid.*

After the deputy director issued his decision, the Hillsdale County Committee revisited Smith's penalty-reduction request and eventually concluded that Smith qualified for the reduction. The county committee then recommended to the Michigan FSA office that the FSA deputy administrator provide "some relief of penalties" to Smith. The county committee noted that a high percentage of Smith's total farmland participated in USDA's conservation program and that Smith's existing conservation practices might deteriorate in the absence of benefits. *Ibid.* The county committee's position was that permitting Smith to participate in future conservation programs was in the interest of USDA's conservation goals. The Michigan FSA office rejected the county committee's recommendation; it instead recommended that FSA not grant Smith a penalty reduction.

The FSA deputy administrator—whose penalty-reduction determination is controlling under § 12.4(c)—sided with the state office rather than the county committee by refusing to grant Smith a penalty reduction. For the deputy administrator, Smith's refusal to mitigate was dispositive. He stated:

> The submitted information shows that although [Smith] is aware of the need to restore or mitigate the converted wetland to regain eligibility for USDA benefits, [he] has no intention to do so and, in fact, [Smith] has expressed an intention to continue cropping the converted wetland. Clearly, [Smith] is able to restore or mitigate the wetland, but is unwilling to do so.

The deputy administrator mentioned § 12.4(c) and the relevant section of the then-applicable agency handbook only in passing, and he made no mention of the six relevant § 12.4(c) factors. The deputy administrator relied principally on 7 C.F.R. § 12.5(b)(5), which provides a separate *exemption* from ineligibility for certain farmers who act in good faith. On April 7, 2011, the FSA Hillsdale County executive director notified Smith that FSA had issued its final determination that Smith was totally ineligible to receive USDA program benefits.

The district court found that the deputy administrator's decision was not arbitrary and capricious because Smith refused to mitigate when "section 12.5(a)(5)(C)(iv), section 12.4(c), and the Handbook . . . all call for mitigation."[24] *Maple Drive Farms*, 2012 WL 6212905, at *11. It noted that although the deputy administrator did not apply § 12.4(c), he "did apply the Handbook paragraph that interprets section 12.4(c)." *Ibid.* Smith now submits that the FSA deputy administrator's decision was arbitrary, capricious, and contrary to law. *See* Appellant Br. 26–29.

### 3. Analysis

At issue is whether the deputy administrator's review of Smith's penalty-reduction request case was arbitrary and capricious.

### a. The Deputy Administrator's Decision

We analyze the deputy administrator's decision in light of the FSA Handbook guidance as it appeared at the time Smith first sought penalty-reduction relief before the FSA Hillsdale County Committee in September 2009. There are numerous problems with the deputy administrator's decision.

First, the decision's reliance on 7 C.F.R. § 12.5(b)(5) is misplaced. That provision affords an exemption from ineligibility—not a mere reduction in penalties—to certain farmers who convert wetland but who act in good faith. As USDA concedes on appeal, the deputy administrator's reliance on § 12.5(b)(5) was incorrect. The relief available under § 12.5(b)(5), which is included in a section titled "Exemption[s]," is distinct from the penalty-reduction relief

---

[24]The district court likely meant "section 12.5(b)." Section 12.5(a)(5)(C)(iv) does not pertain to converted wetlands.

available under § 12.4(c), which is part of a section titled "Determination of ineligibility." The then-applicable FSA handbook substantiates this: the section on good-faith relief expressly includes a note indicating that good-faith relief is *distinct from* § 12.4(c) relief. *See* Farm Serv. Agency Handbook 6-CP (Rev. 3, Amend. 1 Nov. 29, 2006), 7-95. That note states: "See paragraph 737 for payment ineligibility for persons who violate [wetland conservation] provisions and *do not meet good faith requirements.*" *Ibid.* (emphasis added). Paragraph 737, in turn, is titled "Relief for [Wetland Conservation] Violation if Good Faith Requirements Are Not Met," and it is the section that corresponds to § 12.4(c). *Id.* at 7-111. Good-faith relief under § 12.5(b)(5) is distinct from penalty-reduction relief under § 12.4(c).

The second problem with the deputy administrator's decision is that, though it *mentioned* the correct section of the FSA Handbook, it did not apply that section. The district court, correctly, noted that "the [deputy administrator] cited . . . Handbook Paragraph 737," which is the relevant section. *Maple Drive Farms*, 2012 WL 6212905, at *11. But "citing" is not applying. The district court found that the deputy administrator "did apply the Handbook paragraph that interprets section 12.4(c)." *Ibid.* Nothing in the deputy administrator's opinion, however, suggests that he applied the section of paragraph 737 that interprets the § 12.4(c) factors.

Rather, as Smith notes, the deputy administrator only "fleetingly refer[s]" to paragraph 737. Appellant Br. 27. Further, the deputy administrator cites paragraph 737B alongside § 12.5(b)(5), which, as Smith says, is simply "incongruous." *Ibid.* Paragraph 737 relates to applying § 12.4(c); paragraph 731 relates to applying § 12.5(b)(5). Paragraph 737 contains a non-exhaustive list of eight factors that "shall be considered" in making a penalty-reduction determination. *See* Farm Serv. Agency Handbook 6-CP (Rev. 3, Amend. 1 Nov. 29, 2006), 7-111. Six of these factors are substantively identical to those in § 12.4(c), and the two additional factors are similar, i.e., of the same kind. Had the deputy administrator applied paragraph 737, he might have referenced some (or even one) of these eight factors. But he did not analyze any of them.

Regardless of the deputy administrator's citations and references, his decision is substantively grounded in § 12.5(b)(5). That provision allows a farmer who converts wetland to

remain eligible for benefits if the farmer: (1) "act[s] in good faith and without the intent to violate the wetland provisions"; and (2) "is implementing all practices in a mitigation plan." The deputy administrator provided two bases for his decision: Smith's lack of good faith and his failure to mitigate.

The deputy administrator's decision is particularly disconcerting in light of the previous findings of the National Appeals Division deputy director. First, it is odd that the deputy administrator concluded that Smith did not act in good faith when the NAD deputy director recognized in Smith's NRCS appeal that Smith did act—at least in part—in good faith: "I accept that [Smith] believed that not all of the area was properly delineated as wetland, that he had the right to clear out a 45-year-old drainage system, and that the mediation agreement gave him permission to crop the land." *Smith*, Case No. 2009E000846 (July 23, 2010). Second, and more disconcerting, is that the NAD deputy director concluded that the FSA county committee erred when it did not consider Smith's penalty-reduction request *pursuant to 7 C.F.R. § 12.4(c)* and paragraph 737B of the FSA Handbook. *Maple Drive Farms*, Case No. 2010E000063 (July 28, 2010). FSA persisted in its error even after the National Appeals Division gave it express instructions about the governing provisions to apply.

USDA argues that the deputy director properly considered mitigation as a factor in denying a penalty reduction because "[m]itigation is listed as one of the factors that the DAFP is to consider in granting relief under 7 C.F.R. § 12.4(c)." Appellee Br. 48. But the deputy administrator treated willingness to mitigate not as a factor in denying relief, but as a prerequisite to granting relief. That is not what the regulation allows. Because the deputy administrator's decision was "arbitrary" and "not in accordance with law," 5 U.S.C. § 706, we reverse the judgment of the district court and remand with instructions to remand to FSA for further proceedings consistent with this opinion. On remand, the deputy administrator retains discretion to grant or deny relief. The deputy administrator need not consider individually each of the § 12.4(c) factors. But he must anchor his reasoning in the proper law.

### b. The FSA Handbook

The guidance in the FSA Handbook has been conspicuously revised since the deputy administrator issued his decision in Smith's case. *See* Farm Serv. Agency Handbook 6-CP:

Highly Erodible Land Conservation and Wetland Conservation Provisions (Rev. 4, Amend. 1 Feb. 6, 2012), 6-111 to 6-112.  What is conspicuous about the revision is that the new guidance contains the exact two dispositive criteria that the deputy administrator relied on in his opinion below.  The new FSA guidance contains almost the *exact language* that the FSA deputy administrator used in his opinion.  The deputy administrator stated: "Clearly, [Smith] *is able to restore or mitigate the wetland, but is unwilling to do so*."  (emphasis added).  The new FSA guidance states that a farmer is ineligible for a penalty reduction if he "*is able to restore or mitigate the* converted *wetland, but is unwilling to do so*."  Farm Serv. Agency Handbook 6-CP (Rev. 4, Amend. 1 Feb. 6, 2012), 6-111 (emphasis added).  FSA has, perhaps in anticipation of a remand in this litigation, lifted language from the deputy administrator's opinion and placed it into its guidance documents.  This is not the first time that FSA has revised its guidance in the course of pending litigation to facilitate on remand the same finding that it previously reached.  *See Rosenau*, 395 F. Supp. 2d at 873–74 (holding that farmers were, as a matter of law, entitled to a penalty exemption when USDA altered its guidance in the course of litigation to support its prior factual finding).

On remand, FSA must apply the version of its guidance that was in effect at the time Smith initially sought a penalty reduction in September 2009.  "[A]dministrative rules will not be construed to have retroactive effect unless their language requires this result."  *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988).  Generally, "[r]etroactive application of policy is disfavored."  *Iowa Power & Light Co. v. Burlington N., Inc.*, 647 F.2d 796, 812 (8th Cir. 1981).  FSA may not apply its new guidance retroactively.

We need not decide today whether FSA's new guidance is legal or whether the ability to mitigate is a permissible factor for consideration under § 12.4(c).  That said, we observe that each question raises serious concerns.  FSA's new guidance seems to significantly alter the substance of § 12.4(c) by making good faith and the ability to mitigate dispositive and removing the discretion afforded to the deputy administrator.  At first blush, these changes appear to read like commands that normally would go through notice-and-comment rulemaking (or amending).  *See, e.g.*, *Gen. Elec. Co. v. EPA*, 290 F.3d 377, 383 (D.C. Cir. 2002) ("[A]n agency pronouncement will be considered binding as a practical matter," and thus is a "legislative rule,"

"if it either appears on its face to be binding . . . or is applied by the agency in a way that indicates it is binding.") (internal citation omitted); *Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1024 (D.C. Cir. 2000) ("It is well-established that an agency may not escape . . . notice and comment requirements . . . by labeling a major substantive legal addition to a rule a mere interpretation."). The ability to mitigate, moreover, does not have an obvious analogue among the factors listed in § 12.4(c). And while mitigation may still be relevant to the "seriousness of the violation," it is odd to consider that factor under § 12.4(c) when a closely neighboring regulation, § 12.5(b)(4), already creates a mitigation safe harbor. These are difficult questions that USDA would do well to consider carefully on remand.

### III. Conclusion

This complicated case only involves a 2.24-acre parcel of land. But Smith contends, and we have no reason to doubt, that this case has ramifications for thousands of corn and soybean farmers. In January 2009, USDA signed a mediation agreement with Smith, permitting him to plant the parcel in the spring and cut down trees so long as Smith did not remove stumps. USDA has never argued that Smith intentionally violated this agreement. Nonetheless, USDA has permanently deprived Smith of program benefits and forced him to navigate a bureaucratic labyrinth. All the while, USDA has demonstrated a disregard for its own regulations and insisted that Smith mitigate his land when the relief he seeks is not based on regulations requiring mitigation.

At oral argument, USDA stated that "the fact that [Smith] would not come to the mitigation or restoration table colored the reaction of the agency." The fact that Smith's stance on mitigation may have "colored" the agency's relationship with him does not mean that USDA is entitled to ignore the law.

We defer to USDA's interpretation of the prior-converted wetland exemption in 16 U.S.C. § 3822(b)(2)(D). But because NRCS did not consider Smith's minimal-effect evidence, as the applicable regulations contemplate that NRCS must do, we remand on this issue. We also remand to FSA for the agency to consider Smith's penalty-reduction request in accordance with law. On remand, FSA may not rely on its new guidance, whether or not crafted specifically for the purposes of this litigation. We, therefore, REVERSE the judgment of the

district court and REMAND with instructions to remand to the respective agencies for further proceedings in accordance with this opinion.